**FORD MOTOR COMPANY, Plaintiff and Counter-Defendant,**

v.

**TRANSPORT INDEMNITY COMPANY, a California corporation and the Central National Insurance Company of Omaha, Nebraska, a Nebraska corporation, Defendant and Counter-Plaintiffs,**

v.

**AUTOMOBILE TRANSPORT, INC., a Michigan corporation, and Alexander Andrews, Trustee in Bankruptcy of Automobile Transport, Inc., Additional Defendants on Counterclaim.**

**In re AUTOMOBILE TRANSPORT, INC., Debtor.**

**Alexander G. ANDREWS, Plaintiff-Trustee for Automobile Transport, Inc., Plaintiff and Counter-Defendant,**

v.

**FORD MOTOR COMPANY, a Michigan corporation, Defendant and Counter-Plaintiff.**

Civ. A. No. 80–60066.
Bankruptcy No. 9–04232–P.
Adv. No. 81–1957.

United States District Court,
E.D. Michigan, S.D.

Dec. 28, 1984.

George E. Ward, Detroit, Mich., for Ford Motor Co.

Milton Lucow, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for Transport Indem. Co.

John G. Makris, Troy, Mich., for Auto. Transport, Inc.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on plaintiff Ford Motor Company's motion for summary judgment on certain freight damage claims that were not resolved in the court's previous memorandum opinion and order, dated June 28, 1984. 41 B.R. 433. For the reasons stated herein, the motion is granted.

**FACTS**

The facts of this case are set forth in the June 28 opinion, and are incorporated herein by reference. That opinion directed the parties to seek a resolution of the "unprocessed freight damage claims" that were not disposed of in the opinion. Although the precise amount of those unprocessed claims is a matter of some dispute between Ford and Transport Indemnity Co. (TICO), those claims total approximately $655,000.

Following the direction of the court to settle these claims, Ford submitted a proposal to TICO that the parties adopt the "experience of your ... principal (Automobile Transport, Inc., the motor carrier against whom the damage claims were originally submitted, and for whom TICO served as surety under the Interstate Commerce Commission endorsement B.M.C. 32) in allowing filed claims, which is in excess of 80% allowed, to be our guide and applied to the pending $655,693.56 in claims," letter from George Ward, counsel to Ford, to Milton Lucow, counsel to TICO, dated August 7. Mr. Lucow responded by letter dated August 13, and stated that TICO declined to accept Ford's proposal. TICO proposed in the alternative that Ford's unpaid freight charges to ATI be set off in their entirety against the unprocessed claims, which TICO would then allow at their stated amount. TICO has apparently withdrawn this portion of their proposal in light of Ford's objection. In the alternative, TICO has suggested that Ford tender possession of the damage claim forms, which apparently number in the thousands, to TICO for a claim by claim review. TICO concedes that this procedure would entail a substantial expenditure of time and energy, but contends that such a complete review is the only way to fully protect TICO's rights. TICO has argued in its response to this motion that the 80% figure is inappropriate, because it has reason to believe that ATI paid a higher portion of Ford's damage claims than was required under applicable I.C.C. regulations and the practices of the shipping industry.

**DISCUSSION**

*Disposition of the Remaining Damage Claims*

At the hearing on this motion, both parties conceded that resolution of the unprocessed claims might fairly be accomplished without reviewing each and every claim by taking a sample of those claims, calculating a percentage of that sample for which Ford was entitled to reimbursement, and applying that percentage to the full amount of unprocessed claims. The parties further conceded that they might be unable or unwilling to agree upon a fair sampling technique. Indeed, the court encouraged the parties to reach such an agreement before it ruled on this motion, but to date has received no indication from the parties that any agreement has been reached. This lack of movement characterizes the history of this case, which is now commencing its fifth year on the docket of this court. The court believes that a claim by claim review would further delay the resolution of this case unnecessarily.

TICO correctly asserts that the I.C.C. regulations that govern the processing of cargo damage claims by motor carriers

such as A.T.I. provide no express remedy for the carrier's failure to abide by the prompt investigation and disposition requirements of those regulations, *see* 49 C.F.R. § 1005.1–1005.7. It does not follow, however, that Ford, having submitted each of these claims prior to February of 1980, when it made demand upon ATI for payment, is without any remedy to enforce the processing regulations of the I.C.C.

Ford has suggested that, having filed these claims against the carrier, which claims were neither accepted nor denied within 120 days of filing of the claim, as required by § 1005.5, it is entitled to treat the claims as accepted by analogy to bankruptcy procedures. The court agrees that, in the absence of a remedial mechanism in the I.C.C. regulations themselves, the procedures of the Bankruptcy Act provide a useful model for resolving the instant dispute.

Allowance of claims under the Bankruptcy Act is governed by 11 U.S.C. § 502, which provides that:

(a) A claim or interest, which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor or partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

■ Because Ford is now seeking reimbursement for its damage claims from TICO as surety for ATI, TICO would certainly be regarded as a "party in interest" for purposes of allowance or disallowance of these claims. An objection against a claim in a bankruptcy proceeding may be lodged until the court has entered a direct or indirect order allowing the claim, *Matter of Fontainbleau Hotel Corp.*, 30 B.R. 98 (Fla.Bkrtcy.1983); *In re Tower Magazines,* 16 F.Supp. 894 (M.D.Pa.1936). Although this court has granted summary judgment on those damage claims that were processed by ATI and for which ATI drafted but did not deliver checks to Ford, opinion of June 28 at p. 11, it has not yet ruled on the validity of the unprocessed claims. TICO's opposition to the instant motion should be construed by the court as an objection to the unprocessed claims against TICO as surety. Even accepting Ford's analogy to the bankruptcy procedures then, Ford is not entitled to judgment on those claims merely because they were filed.

■ Subsection (b) of § 502 provides that, in the event of objection, the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition. The court will treat the instant motion and the hearing thereon as such an adversary proceeding with respect to the unprocessed claims. It concludes that Ford's proposal to accept the historic percentage of allowed claims to submitted claims, 80%, is a fair and expedient means of resolving the remaining claims. It therefore grants Ford's motion to this extent, holding that Ford is entitled to recover from TICO $524,555 for those claims.

The court acknowledges TICO's argument that there has been to date no formal audit conducted by TICO, ATI, or any entity adverse to Ford on the unprocessed claims. Therefore, neither TICO nor this court can be certain that $655,693.55 is an accurate figure for the amount of unprocessed claims submitted by Ford to ATI. Further, no one is certain at this date (and it probably could not be determined after a full hearing) what percentage of those claims ATI would have accepted had it not become bankrupt in 1980. The answer to these objections, however, is that the inability of the court to make a precise determination of the amount of the unprocessed claims is the responsibility of TICO, not Ford. Pursuant to the applicable I.C.C. regulations, ATI was under a clear obligation to investigate and make a determination on each damage claim within 120 days of submission of the claim. When it failed to do so, either because of its intervening bankruptcy or otherwise, TICO, as surety for ATI under the I.C.C. endorsement, assumed the responsibility to make a determination on those claims. TICO has failed to discharge that duty for over four years, and should not be heard to complain at this date that the court is unable to determine

with precision the aggregate amount of those claims. In the four years that TICO has spent litigating this case, the cost of attorney's fees continued to mount. TICO's repeated response to efforts to resolve this matter has been to change attorneys. It is time to end this fruitless endeavor. In the exercise of commercially reasonable judgment, litigants and their attorneys should settle their differences over marginal sums, the precise amount of which is still disputed, after the principal issues of liability have been resolved by the courts. The thrust of many of the latest proposed amendments to the Rules of Civil Procedures point in this direction. The court believes that its holding on this motion will also encourage such efficient resolution of claims, and discourage costly and protracted litigation of minor matters of detail that redounds only to the benefit of the attorneys.

Therefore, under the facts in this case because neither ATI nor TICO rejected on the merits any of the damage claims submitted to ATI within 120 days of the submission of the claim (and has not done so for more than four years) and because the record shows that 80% is a conservative historical record as to the percentage of submitted claims not questioned and rejected, Ford is entitled to recover from TICO 80% of the total value of the unprocessed claims, or $524,555.

### Set-off of Unpaid Freight Charges

■ The court previously concluded that Ford's unpaid freight charges could be offset against the unprocessed claims, under authority of *In re Yale Express*, 362 F.2d 111 (2d Cir.1966), and TICO's apparent acquiescence to such a set-off, opinion of June 28 at p. 18. In its response to this motion, TICO correctly asserted that it never acquiesced to an offset of the unpaid freight charges against unprocessed claims, but agreed to such an offset only against processed claims. In light of the ruling on this motion, final judgment will be entered on all remaining claims. TICO shall be permitted an offset for the unpaid

freight charges against the full amount of the judgment.

### Pre-Judgment Interest

■ The parties are in disagreement over whether Ford is entitled to interest on the judgment in this case from the date of the filing of its complaint in October of 1980. The availability of prejudgment interest is a question of the substantive law of damages, rather than a procedural question, *see Red Star Towing & Transport, Inc. v. Cargo Ship Ming Giant*, 563 F.Supp. 224 (S.D.N.Y.1983). Because liability in this case arises from the I.C.C. endorsement, federal law governs the availability of such interest in this case.

■ Post-judgment interest awarded by a federal court is governed by 28 U.S.C. § 1961. Although that statute contains no provision for the award of pre-judgment interest, it has been repeatedly construed not to preclude an award of such interest, *see, e.g., Illinois Cent. R. Co. v. Texas Eastern Transmission Corp.*, 551 F.2d 943 (5th Cir.1977). Rather, the availability of pre-judgment interest in a case brought under the federal question jurisdiction of this court is a matter within the discretion of this court, *cf. Ellis v. Chevron*, 650 F.2d 94, 98 (5th Cir.1981) (action brought under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333).

TICO contends that a federal court will not award prejudgment interest when the amount of the claim is not liquidated at the time of the filing of the complaint. Although there is some authority for this position in earlier cases, *see, e.g., Continental Oil Co. v. United States*, 184 F.2d 802 (9th Cir.1950), that rule has been seriously undermined by the recent decision of the Supreme Court in *General Motors v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). The *General Motors* Court construed the damages provision of the Patent Act, 35 U.S.C. § 284, to permit an award of pre-judgment interest, thereby placing the victim of infringement in the same position he would have occupied had the infringement not occurred, *id.,*

103 S.Ct. at 2062–63. Although § 284 expressly mentions an award of interest, the *General Motors* Court relied upon its earlier holding in *Waite v. United States*, 282 U.S. 508, 51 S.Ct. 227, 75 L.Ed. 494 (1931), which reached a similar outcome with respect to the predecessor statute to § 284. The predecessor statute, 35 U.S.C. § 68, contained no such express provision for an award of interest. The *Waite* opinion must be read for the proposition that the statute defining the scope of damages need not contain an express recitation of interest, let alone prejudgment interest, as a predicate to an award of such interest to a prevailing plaintiff.

█ Further, the Court in both *General Motors* and *Waite* awarded the prevailing plaintiff prejudgment interest on claims for lost profits and royalties, which are by definition unliquidated at the time of the filing of the complaint. The court concludes therefore that an award of prejudgment interest in this case is within its sound discretion, and it choses to make such an award at the rate of 12% per year compounded annually. This figure is borrowed from M.C.L.A. § 600.6013(4), which provides for the award of prejudgment interest by Michigan state courts. The court recognizes that it is not obligated to employ the Michigan statute in this case in which liability is not a matter of state law, but choses to adopt the Michigan statutory amount as a fair value.

Such an award of prejudgment interest is eminently fair in this case. For over four years, TICO has had the use of funds that it should have paid to Ford under the terms of the I.C.C. endorsement. TICO has presumably earned interest or made other use of those funds during that time. The principals of full compensation and placing the wronged party in the position it would have occupied absent the wrongdoing compels an award of prejudgment interest in this case.

For the foregoing reasons, Ford's motion for summary judgment is hereby granted.

**SO ORDERED.**