**In re Robert Charles COLLINS, d/b/a Collins Paving and Contracting, Debtor.**

**Victor E. RAYMOS, Trustee, Plaintiff,**

v.

**Robert Charles COLLINS, Defendant.**

**Bankruptcy No. 81–505–BK–J–GP. Adv.No. 81–381.**

United States Bankruptcy Court, M. D. Florida, Jacksonville Division.

April 30, 1982.

Victor E. Raymos, Jacksonville, Fla., for plaintiff.

Edwin W. Held, Jr., Jacksonville, Fla., for defendant.

## MEMORANDUM DECISION

GEORGE L. PROCTOR, Bankruptcy Judge.

### Facts

The factual situation as it pertains to this objection to discharge proceeding is basically undisputed. Debtor filed a Chapter 7 petition on July 13, 1981. Prior to that time, he was engaged as a sole proprietor in the construction business. The current economic crunch convinced him to seek advice of counsel concerning the survival of the business. These initial discussions occurred about 60 days prior to the filing of the petition. His attorney, after a full review of his business resources and liabilities, determined that the business was dying and that bankruptcy loomed as the viable alternative. Of course, as one engaged as an individual proprietor, his assets and liabilities foreign from business were also proper subject for discussion. Aside from the business, debtor and counsel focused on exemption rights afforded to debtors in Florida, a state that has chosen to opt out from the Federal exemption scheme. The debtor wished to protect the real property homestead at all costs from the trustee and the creditors. Counsel advised the debtor that conversion of nonexempt property to that protected by exemptions, should take place prior to the filing of the bankruptcy petition. To accomplish this goal, debtor transferred $55,000 from his business resources to A. G. and Beatrice M. Cooper, who held a valid mortgage on the debtor's homestead. He in turn received and recorded in the official public records a satisfaction of mortgage. Thus his homestead was lien free although his creditors were deprived of $55,000 which otherwise might have decreased the indebtedness owed to them.

Having accomplished what to him was valid pre-bankruptcy planning, he signed and verified a Chapter 7 petition ultimately filed in this court. The schedules which accompany the petition did not reveal this transfer. Debtor suggests that this was an oversight and eventually filed court sanctioned amendments pursuant to Bankruptcy Rule 110 to include the transfer. In the interval between filing and amendment, the trustee without assistance from debtor, learned of the transfer after inspecting the official public records. At the meeting of creditors convened pursuant to 11 U.S.C. § 341, debtor freely admitted the transfer.

The trustee suggests that the foregoing conduct on the part of the debtor should result in the forfeiture of the discharge pursuant to 11 U.S.C. § 727(a)(2) and (4)(A).

### Issues

1. Does a debtor forfeit a discharge pursuant to 11 U.S.C. § 727(a)(2) when on the eve of bankruptcy he transfers $55,000 from business resources to satisfy a mortgage on his homestead which is an exemption protected from the trustee when the transfer is made upon advice of counsel who had knowledge of all relevant facts.

2. Does a debtor forfeit a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) when such transfer is absent from schedules filed with his signed and verified petition although the omission is subsequently cured by amendments permitted by Bankruptcy Rule 110.

The Court answers both in the affirmative.

### Discussion of Non-exempt Assets to Exempt Assets

The debtor suggests that he has acted with propriety after receiving advice of counsel who was advised of all relevant facts. His attorney claims that not to counsel debtor to do such pre-petition planning could result in malpractice. The debtor's main line of defense is predicated upon legislative history found in enacting 11 U.S.C. § 522(b).

> As under current law, the debtor will be permitted to convert non-exempt property into exempt property before a bankruptcy petition. See Hearings pt. 3, at 1355–58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemption to which he is entitled under the law. (House Report No. 95–595, 95th Cong. 1st Sess. 360–1 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6317.

The debtor submits several cases rendered both before and after the effective date of the Bankruptcy Reform Act of 1978 (October 1, 1979) which gives him support for his position.[1] He suggests that under no circumstances can the court glean fraud from the evidence.[2] This Court believes that all of this authority is distinguishable and that this cause and all other similarly situated must stand on its own merits. Facts and not necessarily the abstract statement of law should rule the results of this type of proceeding.

First of all it must be known that Florida has opted out of the Federal exemptions.[3] Citizens of Florida do not receive Federal exemptions of Section 522(d) but are relegated to state law to receive exemptions of property. The provisions are found in Article X, Section IV of the Florida Constitution and Chapter 222 of the Florida Statutes. For one who can qualify as the head of a household, the exemptions are quite liberal. This type of Florida debtor can receive the following:

a. Homestead of unlimited value

b. Personal property of $1,000

c. Wages

d. Cash surrender value of life insurance and annuity policies.

■ The case at bar deals with the real estate exemption, to wit, a homestead of one-half acre (160 acres outside a municipality) plus all improvements irrespective of values. One may sojourn on the beaches of the gold coast of Florida with property values reaching to the stars and keep a homestead of unlimited value free of claims of the trustee or creditors. This decision cannot and does not suggest that this is legally improper. This is not the issue at bar. One is guaranteed under Florida law a homestead free from the clutches of creditors. This property also contributes to the fresh economic start in life promised by the Bankruptcy Code. However, neither the Florida Constitution nor the Bankruptcy Code requires that creditors guarantee that income to be debt free.

A sister court in Texas recently had the opportunity to consider an objection to discharge on facts similar to this proceeding. Bankruptcy Judge Brister after citing the legislative history enumerated above declared,

> That language in the comment that "the practice is not fraudulent as to creditors" is supported, in part, by a comment in Colliers. 3 Collier on Bankruptcy, Para. 522.08(4) at 522–33 (15th ed. 1979).

> The debtors had cited those same comments in defense of the attempt by the trustee to set aside the exemptions in the homestead . . . .

> The commentator in each reference is addressing the subject of entitlement to exemptions. However, the unfortunate language in the comment that "the practice is not fraudulent as to creditors" is

---

1. *Forsberg v. Security State Bank of Conova*, 15 F.2d 499 (8th Cir. 1926); *In re Adlman*, 541 F.2d 999 (2nd Cir. 1976); *Beall v. Pinckney*, 150 F.2d 467 (5th Cir. 1945); *Love v. Menick*, 341 F.2d 680 (9th Cir. 1965).

2. *In re Nerome*, 1 B.R. 658 (Bkrtcy.S.D.N.Y. 1979) and *In re Simmons*, 9 B.R. 62 (Bkrtcy.S. D.Fla.1981).

3. *Florida Statutes* § 222.20.

seized upon by the debtors to defend against the discharge attack. Essentially they contend that where there is no foul, there can be no penalty. That comment does not accurately reflect the law in Texas. V.A.T.S. Art. 3836(b) [3][10] in treating the subject of exempt personal property, specifically prohibits the retention of an exemption in personal property so acquired with proceeds of nonexempt property where there was intent to defraud, delay or hinder a creditor or other interested persons.

The fact that the statute denounces the conversion of nonexempt assets to exempt personal property with intent to hinder, delay or defraud creditors belies the contention that "the practice is not fraudulent as to creditors" under Texas law. By statute where personal property exemptions are concerned the practice is fraudulent in Texas. The Texas Constitution prohibits the taking of the exempt real estate, but it does not prevent the practice from likewise being fraudulent as to creditors where, as here, it is made with the intent to hinder, delay or defraud creditors. Where fraud on creditors is concerned, the practice of converting nonexempt property to exempt property, personal or real estate, is equally denounced.

There is another reason why the cited references are inapplicable in Texas. *From the legislative history and from further comments in the cited paragraph in Colliers it appears that the basis for that law which permits the conversion of nonexempt property to exempt property in the jurisdictions where it appears to be applicable is that that result is necessary in order to furnish the "fresh start" and to provide the debtor with minimum exemptions. In the legislative history those arguing in support of that position appear to be concerned with the fact that in some jurisdictions the exemptions permitted by the state are quite minimal.*[11] *There can be scant support for that position in Texas, however, where the homestead exemption reaches to infinity.* V.A.T.S. Art. 3833(a)(3) provides a home-

stead exemption in a lot or lots "not to exceed in value $10,000.00 at the time of their designation as a homestead, without reference to the value of any improvements thereon." Therefore as long as the lot or lots have value of no more than $10,000.00 when the homestead designation is made there is no limit on the value and scope of the physical structure that may be built upon it, with or without swimming pool. The Texas exemption in real estate is by no definition "minimal." For the above reasons, I conclude that the referenced expression that "the practice of converting nonexempt property into exempt property before filing a bankruptcy petition is not fraudulent as to creditors" has no application in Texas. I find that Hugh D. Reed transferred proceeds of sale of nonexempt assets to exempt real estate, that by making that transfer he placed monies totalling $34,-500.00 beyond the reach of the trustee and the creditors, and, regardless as to whether or not he received a reasonably equivalent value for the nonexempt assets, he effected the transfer within less than two weeks of bankruptcy with the intent to hinder, delay, or defraud creditors and the trustee. (Emphasis added)

*In re Reed,* 11 B.R. 683, 8 B.C.D. 31, 34 (Bkrtcy.N.D.Tex.1981).

This Court adopts this concept enthusiastically. Florida citizens who come before this Court and their legal advisors are put on notice that this Court will inspect carefully transfers of this nature. As indicated, each case will rise or fall by the weight of the merits of the case. Some transfers certainly are permissible and should be encouraged. However, cases with a factual scenario which reveal that business assets which belong to creditors are being used to delete individual debts will not be permitted.

The advise of counsel is not a complete defense if the action taken is improper. Counsel seized on some legal authority and the legislative history to suggest that the transfer was permissible. However, the prudent legal advisor must realize that in

the law the facts must be of paramount importance.

Under no circumstances can this Court excuse this course of action and the Court will find that the debtor's conduct is a forfeiture of discharge.

### Discussion of False Oath

■ This issue is relatively simple to adjudicate. Major improprieties will not be permitted or condoned in schedules filed by a debtor who signs and acknowledges under penalty of perjury that the same are true and correct. To do otherwise is to make a mockery of the process. Certainly, human frailty is always present. One forgets a creditor or fails to list a minor asset. This is the reason for Bankruptcy Rule 110 which permits amendments freely. Such amendments are made with more frequency than liked but that is understood and accepted.

Title 11, U.S.C., § 727(a)(4)(A) states that the Court should not grant a discharge to one who

. .. knowingly and fraudulently, in or in connection with the case—made a false oath or account.

In *In re Melnick*, 360 F.2d 918 (1966), the United States Court of Appeals, Second Circuit, had before it an appeal of a denial of a discharge whose facts are quite similar to the matter before this Court. In *Melnick* the debtor satisfied mortgage debts on his home during the year preceding his filing the petition in bankruptcy. On the debtor's sworn statement of affairs he made no reference to satisfaction of the mortgage debts. Furthermore, to a question as to what property had been transferred during the year preceding the filing of the petition, the debtor answered "none." In upholding the lower court's ruling denying the debtor's discharge, the Court of Appeals found that the debtor had made a false oath and had done so "knowingly and fraudulently." The court held that the phrase "knowingly and fraudulently" simply meant "an intentional untruth in a matter material to the issue which is itself material." *Id.* at 920, citing *In re Slocum*, 22 F.2d 282, 285 (2nd

Cir. 1927), quoting *Troeder v. Forsch*, 150 F. 710, 713 (1st Cir. 1906). The issue before this Court is whether or not the debtor's discharge should be denied. Clearly, of fundamental importance to this issue is whether or not the debtor has accurately and truthfully presented himself before the Court.

■ The debtor's position is that he made a transfer openly and legally and as part of the pre-bankruptcy planning. This he says was based upon advice of counsel who then prepared the necessary petition and schedules for filing under Chapter 7. These schedules do not reveal the transfer. It is fair to ask—why not? Debtor replies, "It is a mistake"; and counsel says, "Blame me, not the debtor—it was due to mistake and inadvertance."

Fortunately, an experienced bankruptcy trustee did not rely only on the schedules. Instead, he made his own inspection of the official public records and found the satisfaction of mortgage exchanged for $55,000 of creditors' assets. Alerted thereto, he followed with a question to the debtor at the Section 341 meeting of creditors. To the debtor's credit, he did not compound the omission by a falsehood. He admitted the transfer freely and the schedules were soon amended to cure the defect.

The false oath was made, however, and the Court finds that the circumstances support that it was done "knowingly and fraudulently." The only reason for omission was to prevent the trustee from protecting the estate. To list is to alert, to omit is to buy quiescence, i.e., don't wake up a sleeping dog. The Court simply does not believe the debtor when he suggests that the omission was innocent.

### JUDGMENT

Upon the foregoing, the Court finds that each issue raised above should be answered in the affirmative. Accordingly, under 11 U.S.C. § 727(a)(2) and (4)(A), the discharge of the debtor by separate final judgment will be denied.