**In re Henry BLUM and Rashel Blum, Debtors.**

**A. Jay CRISTOL, as Trustee in Bankruptcy, Plaintiff,**

v.

**Henry BLUM and Rashel Blum, Defendants.**

**EAGLE NATIONAL BANK, a national banking association, Plaintiff,**

v.

**Henry BLUM and Rashel Blum, Defendants.**

Bankruptcy No. 83–02097–BKC–SMW. Adv. Nos. 84–0101–BKC–SMW–A, 84–0102–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 30, 1984.

Webster & Moorefield, P.A., Miami, Fla., for debtors/defendants.

Andrew J. Nierenberg, Miami, Fla., for Eagle National Bank.

A. Jay Cristol, Miami, Fla., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard upon a Complaint filed by A. JAY CRISTOL, Trustee of the above-captioned Bankruptcy Estate (TRUSTEE) and a Complaint filed by a Creditor, EAGLE NATIONAL BANK, (BANK), objecting to the Debtors' Discharge pursuant to 11 U.S.C. § 727(a)(2), which section requires the denial of discharge to debtors who fraudulently transfer their property prior to bankruptcy. The Bank's Complaint also objected to the Debtor's Discharge pursuant to § 727(a)(5), which section requires the denial of discharge to debtors who fail to explain satisfactorily a deficiency of assets to meet their liabilities. Because the averments in both Complaints were largely identical, the two Adversary Proceedings were consolidated for trial. At the close of the Trial, the Debtor/Wife's Motion to Involuntarily Dismiss the actions against her was granted and a separate Order of Involuntary Dismissal was entered by the Court and therefore, only the Debtor/Husband remains as a Defendant herein. Accordingly, the Court does hereby make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

The Debtor/Husband was an officer and stockholder of two closely held corporations known as Style Light, Inc. and Style Light International, Inc. (Corporations). The Bank had made substantial loans to these Corporations, which the Debtor/Husband had guaranteed individually. In early 1983, the Corporations' loans to the Bank became delinquent, when the Corporations could not collect a large account receivable from a South American Company.

While the Bank held security interests in certain assets of the Corporations, the Bank held no security interest in any of the Debtor/Husband's property.

The Trustee and the Bank alleged that the Debtor/Husband, prior to the filing of his Voluntary Bankruptcy Petition on November 17, 1983, converted certain non-exempt assets into property which is exempt under Florida law, with the intent to hinder, delay and defraud his creditors. Specifically, the Trustee and the Bank alleged that between May and September of 1983, the Debtor/Husband liquidated various securities and bank accounts which he owned personally with his wife and used the proceeds from such liquidation to pay down mortgages on his homestead residence and to purchase an annuity.

Both the Debtors' homestead and the annuity are exempt from claims of creditors in Florida. Article 10 § 4 of the Florida Constitution provides:

> "There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, ... the following property owned by the head of a family: ... if located within a municipality, to the extent of one half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family..."

Similarly, Florida Statute 222.14 provides:

> "... the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of ... any creditor of the person who is the beneficiary of such annuity contract, unless the ... annuity contract was effected for the benefit of such creditor."

818

The Trustee and the Bank argue that these transfers were made at a time when the Husband knew his business was failing and were made to deprive his creditors of any non-exempt assets which could be used to satisfy their claims.

The Debtor/Husband admitted that the transfers were made but argued that they were made not to delay his creditors but to provide a degree of security for his family at a time when his business future was uncertain.

## CONCLUSIONS OF LAW

The Court concludes that the Debtor/Husband's transfers of non-exempt assets into exempt assets, under the circumstances of this case, were legitimate pre-bankruptcy planning allowed by the Bankruptcy Code.

This Court recently has had an opportunity to address the issue of whether the transfer of non-exempt assets to satisfy mortgages upon a homestead constitutes a fraud on creditors in *Judson v. Levine*, 40 B.R. 76 (B.K.Fl.1984). In *Judson*, this Court held that the mere act of converting property from non-exempt to exempt status, without more, is neither a badge of fraud nor prohibited by the Bankruptcy Code.

As stated in the decision of *Matter of Reed*, 700 F.2d 986 (C.A.5 1983):

"Before the Bankruptcy Code was adopted in 1978, it had been urged that property obtained in such last minute conversions be ineligible for exemption ... The Code however, adopts the position that the conversion of non-exempt to exempt property, without more, will not deprive the debtor of the exemption to which he would otherwise be entitled. 3 *Collier, supra* § 522.08[4] ...

Mere conversion is not to be considered fraudulent unless other evidence proves actual intent to defraud creditors. While pre-bankruptcy conversion of non-exempt into exempt assets is frequently motivated by the intent to put those assets beyond the reach of creditors, which is, after all, the function of an exemption, evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge ... Only if such a finding is made, may a discharge be denied."

*Reed,* at Pages 990 and 991. See also, *In Re: Adlman,* 541 F.2d 999 (C.A.2 1976) and *In Re: Wudrick,* 451 F.2d 988 (C.A.9 1971).

The decisions which have denied a debtor's discharge under § 727(a)(2) have found the required extrinsic evidence of fraud such as diversion of business assets into personal assets or where recently borrowed monies were placed into exempt property. See *Reed, supra, Matter of Mehrer,* 2 B.R. 309 (B.K.WA.1980) and *In Re: Collins,* 19 B.R. 874 (B.K.M.D.FL.1982).

Florida Courts have guarded jealously the homestead exemption in many decisions which are consistent with the one expressed here. The conversion of non-exempt assets to a homestead, even with the expressed purpose of avoiding creditors' claims, has been held permissible as,

"The intent to do what the Constitution not only permits but provides is not an intention to hinder and defraud creditors within the meaning of the Florida Statute on that subject. Nothing has been taken from them to which they were entitled."

*Beall v. Pinckney,* 150 F.2d 467 (C.A.5 1945) at Page 741. See also, *Spach v. Kleb,* 112 So.2d 21 (3 D.C.A.1959) and *Bank of Greenwood v. Rawls,* 117 Fla. 381, 158 So. 173 (S.Ct.1934).

The Florida Supreme Court has placed all creditors on notice that it is their burden to guard against the conversion of non-exempt assets into a homestead by,

"either taking an express written lien on the unencumbered property at the time the credit is extended, or by beginning a suit and levying an attachment on the land to impress on it an attachment lien in anticipation of the debtor's intent to dispose of his property by putting it out of his creditor's reach before a judgment lien can be perfected on it in order to satisfy the debt."

*Heddon v. Jones,* 115 Fla. 19, 154 So. 891 (1934), at Page 892.

The Trustee and the Bank have failed to carry their burden of proving extrinsic evidence of fraud in addition to the mere transfers of assets themselves. Neither the Bank, nor any other creditor, held any lien upon the property converted into exempt property by the Debtor/Husband. Moreover, no evidence was offered to show that the converted assets belonged to the Debtors' business or to any other entity other than the Debtors themselves.

Because an annuity enjoys exempt status under Florida Law identical to that of a homestead, the Court concludes that no logical distinction can be drawn between a conversion of non-exempt assets into either a homestead or an annuity and therefore, a transfer of assets into an annuity also cannot be considered fraudulent per se.

> As stated by another Bankruptcy Court, "A debtor who uses his non-exempt property, which is free from the liens and vested interest of his creditors to obtain a homestead ... merely avails himself of a plain provision of the constitution or the statute enacted for the benefit of himself and his family. He takes nothing from his creditors by this action in which they have any vested right ... nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud."

*In Re: White,* 28 B.R. 240 (B.C.VA.1983) at Page 242, quoting *Forsberg v. Security State Bank of Canova,* 15 F.2d 499 (C.A.8 1926), quoting *First National Bank of Humboldt, Neb. v. Glass,* 79 F. 706 (C.A.8 1897).

Similarly, the Court concludes that the Bank failed to carry its burden of proving that the Debtor/Husband failed to explain his deficiency of assets to meet his liabilities under § 727(a)(5). At trial, the Debtor/Husband testified to the Court's satisfaction in detail both as to his earnings and assets and as to their disposition prior to Bankruptcy.

Further, the Bank's allegation that the Debtor/Husband failed to properly value two automobiles in his Bankruptcy Schedules is not a ground for denial of his discharge under § 727. The automobiles were properly scheduled as assets and disclosed to the Trustee who was afforded an opportunity to make an independent appraisal of their value.

The Bank and the Trustee have failed to show a right to relief in this cause and therefore, Judgments shall be entered for the Debtor/Husband.

Separate Final Judgments will be entered in each Adversary Proceeding in accordance with these Findings of Fact and Conclusions of Law.