**In the Matter of SIMS OFFICE SUPPLY, INC., Debtor.**

**SIMS OFFICE SUPPLY, INC., Plaintiff,**

v.

**KA–D–KA, INC., et al., Defendants.**

Bankruptcy No. 87–967–6P1.
Adv. No. 87–185.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 19, 1988.

**746**

David R. McFarlin, Orlando, Fla., for plaintiff.

Robert L. Young, Orlando, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 11 case is an Amended Complaint to Recover Preference filed by the Plaintiff/Debtor, Sims Office Supply, Inc., against Defendants Ka–D–Ka, Inc. (Ka–D–Ka) and Davie E. Sims, (Davie) pursuant to Title 11 U.S.C. § 547. The Court reviewed the record, heard argument of counsel on May 12, 1988 and finds as follows:

The Debtor is in the office supply business. Orlando Florco, Inc., the predecessor in name of the Debtor, purchased the assets of Ka–D–Ka, f/k/a Sims Office Supply, Inc. In connection with the purchase, on May 15, 1984, Orlando Florco, Inc. executed an Asset Purchase and Sale Agreement; three (3) promissory notes, each dated May 1, 1984, in the principal amount of $300,000.00, $561,282.95, and $135,435.52 respectively; and a security agreement, granting Ka–D–Ka a security interest in certain inventory, equipment and receivables that were "sold to [Debtor] by [Defendant] in accordance with the Purchase Agreement." Note payments were due on the first of each month, but were not in default if made within thirty days of the due date.

Davie is the president, director and shareholder of Ka–D–Ka. Ka–D–Ka, not actively engaged in any business, exists solely to hold and collect payments on the promissory notes. After the sale of assets, Davie and his wife worked for the Debtor and were compensated solely pursuant to separate employment agreements. Davie held various job titles and positions while in the Debtor's employ. He relinquished his positions as director, vice president, secretary, and treasurer by letter dated May 24, 1985. Further, he left the Debtor's employ as consultant and manager in October, 1986.

During the one year period prior to the filing of the involuntary petition, the Debtor made payments to Defendants pursuant to Asset Purchase and Sale Agreement as follows:

| Date Due | Date Paid | Amount |
| --- | --- | --- |
| March 1, 1986 | March 17, 1986 | $ 2,229.55 |
| April 1, 1986 | April 16, 1986 | 2,229.55 |
| April 1, 1986 | May 1, 1986 | 18,157.50 |
| May 1, 1986 | May 13, 1986 | 2,229.55 |
| May 1, 1986 | May 1, 1986 | 48,825.00 . |
| June 1, 1986 | June 10, 1986 | 2,229.55 |
| * | June 11, 1986 | 2,229.55 |
| July 1, 1986 | July 14, 1986 | 2,229.55 |
| August 1, 1986 | August 25, 1986 | 2,229.55 |
| August 1, 1986 | August 1, 1986 | 18,157.50 |
| Sept. 1, 1986 | Sept. 16, 1986 | 2,229.55 |
| Oct. 1, 1986 | Oct. 9, 1986 | 2,229.55 |
| Nov. 1, 1986 | Nov. 12, 1986 | 2,229.55 |
| Nov. 1, 1986 | Nov. 3, 1986 | 18,157.50 |
| Dec. 1, 1986 | Dec. 15, 1986 | 2,229.55 |
| Jan. 1, 1987 | Jan. 14, 1987 | 2,229.55 |
| Feb. 1, 1987 | Feb. 11, 1987 | **20,387.05 |
| Feb. 1, 1987 | Feb. 22, 1987 | ***20,387.05 |
| March 1, 1987 | March 17, 1987 | 2,229.55 |

\* Unscheduled payment.

\*\* Check was not deposited because of insufficient funds in account.

\*\*\* Cashier's check given as replacement for ** check.

With the exception of the February 22, 1987, payment made by cashier's check, the payments were made by the Debtor's company checks.

By letter dated December 5, 1986, attorneys representing Ka–D–Ka notified the Debtor that it was in default of the security agreement between the Debtor and Ka–D–Ka. As of the date of the letter, the Debtor was continuing to make regular payments on the promissory notes.

On March 16, 1987, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the Debtor. An order for relief was entered and the case was converted to Chapter 11 on April 1, 1987.

■ As a starting point, this Court is satisfied that pursuant to Title 11 U.S.C. § 547, the payments made in March, 1986 through December, 1986 and March, 1987 do not constitute preferential transfers. First, the 90–day preference period applies rather than the one year preference period because Davie was not an insider. Nothing in the record indicates Davie had any control over the Debtor despite the various titles he held. *See*, e.g. *In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 685 (N.D. Oh.1986). Davie resigned as officer in June, 1986 and left the Debtor's employ in October of 1986. Mr. Nahree, the principal of the Debtor, formulated all corporate policies. Second, the evidence at trial establishes the Debtor was solvent in March, 1986 through December, 1986. Therefore, the Debtor is not entitled to recover any payments made to Ka–D–Ka or Davie prior to January, 1987.

The March 16, 1987 payment was made on the day the involuntary petition was filed. The issue arises as to whether the check is considered transferred on the date it is physically delivered, or the date it is honored by the bank. If deemed transferred upon delivery, then the March payment was transferred pre-petition and the preference issue remains. On the other hand, if the March check is deemed transferred on the date the bank honors it, then the transfer is post-petition and may be avoidable pursuant to Title 11 U.S.C. § 549.

■ There is a split of authority regarding the issue of when a check is deemed transferred. See *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 874–75 (Bankr.W.D.Mich.1984). One line of cases holds the transfer of a check occurs when the check is honored by the bank. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974); see *Tambay Trustee, Inc. v. Green (Matter of Don Mowery, Inc.)*, 65 B.R. 607 (Bankr.M.D.Fla.1986). These cases follow the Uniform Commercial Code which provides:

A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

Fla.Stat. § 673.3–409 (1988). Another line of cases holds that a transfer occurs upon delivery of the check. See *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631 (10th Cir.1986). This Court finds it more appropriate to follow the Uniform Commercial Code and holds a transfer of a check occurs when the check is honored by the bank. Since the bank had to have honored the check after commencement of this case, the March 1987 payment is a post-petition transfer. Plaintiff did not plead 11 U.S.C. § 549 in its Complaint. At the trial, however, Plaintiff did raise, with the Defendant's express consent, Section 549 as an alternative for voiding the March, 1987 payment. In accordance with F.R.C.P. 15(b) and Bankruptcy Rule 7015(b), this Court finds it appropriate to conform the pleadings to the evidence presented and the claim raised at trial. See generally, *Morgan v. Kanak (In re Kanak)*, 85 B.R. 483 (Bankr.N.D.Ill.1988). Thus, the March payment is avoidable pursuant to Title 11 U.S.C. § 549, rather than pursuant to Title 11 U.S.C. § 547. This Court finds the March, 1987 payment must be returned to the Debtor with interest.

Since the Debtor's right to recover the post-petition transfer arises under federal law, Title 11 U.S.C. § 549, federal law governs the availability of interest on the recovery. *Crampton v. Dominion Bank of Bristol, N.A. (In re the H.P. King Co.,*

*Inc.),* 64 B.R. 487 (Bankr.E.D.N.C.1986) (citing *Ford Motor Co. v. Transport Indemnity Co.,* 45 B.R. 843 (E.D.Mich.1984)). Post-judgment interest is mandated by statute for civil money judgments recovered in a district court. 28 U.S.C. § 1961 (1988). As federal courts, the bankruptcy courts are required to award post-judgment interest in accordance with 28 U.S.C. § 1961. Pre-judgment interest, on the other hand, is not mandated by 28 U.S.C. § 1961 or the Bankruptcy Code. A review of the case law, however, indicates that pre-judgment interest is proper in this case. *See DuVoisin v. Anderson (In re Southern Industrial Banking Corp.),* 87 B.R. 518 (Bankr.E.D.Tenn.1988); *Wilson v. First National Bank, Lubbock, Texas (In re Missionary Baptist Foundation of America, Inc.),* 69 B.R. 536 (Bankr.N.D. Tex.1987).

■ Pre-judgment interest on post-petition transfers voidable under Title 11 U.S. C. § 549 starts to accrue on the date of the transfer. The remaining issue is the rate for pre-judgment interest. Section 1961 fixes the rate of post-judgment interest:

> [The rate is] equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price of fifty-two week United States Treasury bills settled immediately prior to the date judgment ... (b) Interest shall be computed daily to the date of payment ..., and shall be compounded annually.

In fixing pre-judgment interest, most bankruptcy courts have followed 28 U.S.C. § 1961. The pre-judgment interest rate in preference litigation has been fixed at the last auction price of Treasury bills settled immediately prior to the date of demand. *Southern Industrial Banking Corp., supra* at 523. *Crampton v. Dominion Bank of Bristol, N.A. (In re the H.P. King Co., Inc.),* 64 B.R. 487 (Bankr.E.D.N.C.1986). In this case, interest started to accrue on the date the bank honored the March, 1987 check. *Fitzpatrick, supra.* This Court finds the pre-judgment interest rate will be the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week U.S. Treasury bills settled immediately prior to the date the bank honored the March, 1987 payment. Upon the anniversary of the date of transfer of the March, 1987 payment, the rate shall be adjusted to reflect the new interest rate for fifty-two week Treasury bills. *See Southern Industrial Banking Corp., supra* at 523. The pre-judgment interest rate shall continue until judgment, when all interest and principal is merged into the judgment and the post-judgment interest rate becomes applicable. *Id.* at 524.

■ This leaves for consideration the January and February, 1987 payments. The Debtor must prove the following elements in order for these payments to be preferential:

(1) The transfer of an interest of the debtor in property;

(2) To or for the benefit of a creditor;

(3) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(4) Made while the debtor was insolvent;

(5) Made on or within 90 days before the date of the filing of the petition;

(6) That enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7.

Title 11 U.S.C. § 547(b). Even assuming these payments constitute preferential transfers, the payments may not have to be avoided because they fall under the ordinary course of business exception of Section 547(c)(2).

Section 547(c)(2) requires proof that:

(1) The debt was incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(2) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(3) made according to ordinary business terms.

The burden of proof is on the Defendant to establish all elements of this exception.

The Debtor argues any payments found to be preferential do not fall within the ordinary course of business exception for several reasons.

The Debtor's purchase of the office supply business from Ka–D–Ka provided purchase money financing over a fifteen year term. The Debtor argues long term loan payments are not made in the ordinary course of business. The cases cited in support of this argument involve situations where the creditor advanced funds to the Debtor in order to maintain business operations. See, *Henderson v. Buchanan (In re Western World Funding, Inc.)*, 52 B.R. 743 (Bankr.Nev.1985); *Waldschmidt v. Ranier (In re Fulghum Construction Co.)*, 7 B.R. 629 (Bankr.M.D.Tenn.1980). In those cases, the Court found since the creditor was not in the business of lending money and since the advances were given to keep the Debtors afloat, the advances were not made in the ordinary course of business. The payments in this case were on the purchase money promissory notes and security agreements. Further the Defendant's evidence establishes that since the sale of the assets in May, 1984, the Debtor had made regular payments to Ka–D–Ka on the three promissory notes. They were made within the ordinary course of business.

Second, the Debtor argues the payments made after the December 5, 1986 letter of default cannot be considered made in the ordinary course of business. The Debtor contends the payments were made in response to Defendant's letter which would make the payments a response to unusual collection efforts, thus not in the ordinary course of business. See, *Campbell v. Cannington (In re Economy Milling Co., Inc.)*, 37 B.R. 914, 922 (S.C.1983). Plaintiff made payments for two and one-half years prior to the sending of the letter. There is no evidence to establish the subsequent payments were made solely in response to the letter. Thus, this argument is without merit. There is no deviation in the payment method or stream to destroy the ordinary course of business exception.

With respect to the February, 1987 payment by cashier's check, the Debtor contends the cashiers check does not fall within the ordinary course of business exception because previously payments were made by company check. In February, 1987, Suman Nayee, president of the Debtor, delivered to Davie a check for $20,-387.05 drawn on the Debtor's operating account at Barnett Bank. Davie contacted Barnett Bank and, upon finding there were insufficient funds in the Debtor's account to pay the check, advised Nayee of this situation. Nayee volunteered to deliver to Davie a Barnett Bank cashier's check for the February, 1987 payment.

■ The fact alone a payment was made by cashier's check does not take the payment out of the ordinary course of business exception. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563 (11th Cir.1986). Surrounding factors which would indicate the payment by cashier's check is outside the ordinary course of business are where (1) the debtor had not previously paid by cashier's check; (2) a significant number of payments were overdue; (3) payments were made after the Debtor stopped doing business with the creditor and after the Debtor ceased operations; (4) the payment was induced by the creditor's request for assurance of payments; and, (5) another creditor was attempting to push the debtor into bankruptcy. *Craig Oil, supra*, at 1568. See also, *Ferrari v. Computer Associates International, Inc. (In re First Software Corp.)*, 84 B.R. 278 (Bankr.Mass.1988).

In the case at hand, the Debtor did not tender the cashier's check to Ka–D–Ka in response to coercion by Ka–D–Ka. While the Debtor was notified there were insufficient funds to cover the company check, the Debtor's president, upon his own initiative, replaced the company check with the cashier's check. The cashier's check was delivered within the 30–day grace period and payments after the due date were the custom of the parties. The only factor present to indicate the payment was made outside the ordinary course of business is that the Debtor had not previously paid by

cashier's check. This factor alone does not sway this Court from finding the February payment by cashier's check to have been made within the ordinary course of business. Inasmuch as the January and February, 1987 payments were made in the ordinary course of business, it is unnecessary to discuss whether the payments were preferential. This Court finds these payments do not have to be returned to the Debtor. The March, 1987 payment, however, does have to be returned to the Chapter 7 trustee with interest calculated in accordance with this opinion. A separate final judgment shall be entered by this Court.

DONE AND ORDERED. ·