**In re Thomas Francis GEPFRICH, Debtor.**

**Thomas Francis GEPFRICH, Plaintiff,**

**v.**

**Marjorie Lois GEPFRICH, James Fox Miller, et al., Defendants.**

**James Fox MILLER, et al., Counter–Plaintiffs,**

**v.**

**Thomas Francis GEPFRICH, Counter–Defendant.**

**Daniel L. BAKST, Trustee, Plaintiff,**

**v.**

**Thomas Francis GEPFRICH, Defendant.**

Bankruptcy No. 89–22892–BKC–AJC. Adv. Nos. 89–0433–BKC–AJC–A, 89–0465–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

July 6, 1990.

Reggie David Sanger, Fort Lauderdale, Fla., for James Fox Miller.

John L. Britton, Fort Lauderdale, Fla., for Marjorie Lois Gepfrich.

Samuel L. Heller, Fort Lauderdale, Fla., for Thomas Francis Gepfrich.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER having come before this Court on April 3, 1990 at 1:30 o'clock p.m., on the bifurcated trial in this cause, on the Defendant/Counter–Plaintiffs, JAMES FOX MILLER, MILLER & SCHWARTZ, P.A., n/k/a MILLER, SCHWARTZ & MILLER, P.A., (hereinafter referred to as "MILLER") and MARJORIE LOIS GEPFRICH's (hereinafter referred to as "wife") counterclaims objecting to the discharge of the Plaintiff/Counter–Defendant, THOMAS FRANCIS GEPFRICH, (hereinafter referred to as "Debtor"), under 11 U.S.C. Section 727(a)(2) and after considering the argument of counsel, the evidence submitted, the credibility and demeanor of the witnesses, and the testimony of the witnesses, the Court makes the following findings of fact and conclusions of law:

The Debtor filed his petition for relief under Chapter 7 of the United States Bankruptcy Code on June 13, 1989 at 2:27 p.m. At the time of the filing, the Debtor was insolvent in that his liabilities exceeded his assets and he was not paying his debts as they matured. In fact the Debtor had been insolvent since May 1989.

A Final Judgment of Dissolution of Marriage was entered on the 26th day of February, 1986 which obligated the Debtor to MARJORIE LOIS GEPFRICH for child support and alimony. The state court judge in the Final Judgment of Dissolution of Marriage, found that Mrs. Gepfrich was in need of alimony and child support, as well as reasonable attorney fees. The state court decided not to encumber the marital assets which included but were not limited to: Debtor's pension and profit sharing plan, a Hatteras yacht, 50% ownership interest in Heritage Quality Construction Co., Inc. and a Mercedes Benz automobile. This was done so that the Debtor would be permitted maximum flexibility to pay the financial obligations required of him under the final judgment. The Debtor and his wife were ordered to take each and every reasonable and necessary action, and to conduct themselves in such a manner as to carry out the intent and purposes of the final judgment.

At the time of the filing of his petition in bankruptcy, the Debtor owed $200,000.00, plus an arrears of at least $20,000.00, to his wife. Additionally, the Debtor owed MILLER, the divorce attorney for MARJORIE LOIS GEPFRICH, the sum of $59,148.55 since 1986 and had not paid any sums toward the obligation since 1986.

After the Debtor defaulted under his obligations to his wife, on April 21, 1989 a hearing was conducted on the wife's Petition to Compel Payment of Lump Sum Alimony. At the contested hearing on the matter, the state court entered its order dated May 29, 1989 wherein the Court determined:

At the time of the hearing in this matter, the Husband had sold his interest in Heritage Construction, disposed of his pension and profit sharing plan, sold his Hatteras yacht, sold his Mercedes Benz automobile, built and disposed of one (1) single family residence and at present, is living in a Two Hundred Seventy–Five Thousand Dollar home encumbered by a first mortgage of Two Hundred Forty Thousand Dollars. The record also reflects other various asset transfers by the Husband during the approximate three (3) years from the entry of the final judgment. Due to the nature of the final judgment allowing the Husband maximum flexibility in which to utilize the assets for payment to the wife, the

Court finds that the Husband, after disposing of the majority of the marital assets, failed to pay the wife the monies due her. In addition, the Husband had, pursuant to the record, at least One Hundred Thousand Dollars, in discretionary spending which he used for the purchase of stocks, a new home, and gifted approximately Fifteen Thousand Dollars to his children by a prior marriage.

7. The Court specifically finds that the Husband did not act in the spirit and intent of the Final Judgment in this matter despite the fact that each party was ordered to take each and every reasonable and necessary action and conduct themselves in such manner as to carry out the intent and purpose of the Final Judgment.

The state court concluded that the Debtor was ordered to pay to the former wife by May 21, 1989, the sum of One Hundred Seventy Thousand Dollars which was the sum due, as principal, under the final judgment. If the Debtor failed to comply with the order the Court said it would consider, upon proper application from the wife, any remedies to compel payment including but not limited to appropriate contempt orders if available. The state court order of May 25, 1989 was affirmed by the state appellate court.

It was also at this hearing that the Debtor, through its agents, represented to the state court that he had $50,000.00 from the sale of his interest in Heritage Quality Construction, Inc. However, this sum was in the form of a certificate of deposit and was held as collateral with Ambassador Savings and Loan Association and could not be reached until at least September 1989.

After the Debtor failed to make the payment of the $170,000.00 to his former wife, the Debtor sought the advice from his bankruptcy counsel, Samuel Heller, Esquire. The Debtor learned from Mr. Heller that if he were to file a bankruptcy petition he would lose his interest in the $50,000.00 certificate of deposit to the Trustee and creditors of this estate. The Debtor was advised that the only possible way of protecting the $50,000.00 would be to get the sum released from the bank and convert same into an annuity.

When it became apparent to the wife that the Debtor was not going to honor the state court order for payment she filed a Motion for Contempt and Sanctions against the Debtor and set the matter for hearing on June 13, 1989 at 3:00 p.m. The Debtor fearing he may be incarcerated for his failure to pay any sums as ordered contacted the representative of the bank and an insurance salesman recommended by his bankruptcy attorney for the purpose of converting the $50,000.00 certificate of deposit to an annuity.

On the day of the scheduled contempt hearing in state court the Debtor succeeded in cashing in the certificate of deposit at a penalty and having the net proceeds of $49,012.09 issued in a cashier's check made payable to himself. Then, at a prearranged meeting at his bankruptcy counsel's office with the insurance salesman, Mr. Williams, the Debtor endorsed the check over to First Colony Life Insurance Company. The Debtor gave the check to Mr. Williams who in turn delivered the check to First Colony Life Insurance Company's agent, E. Donald Fuerst, whose office is located in Fort Lauderdale, Florida.

Mr. Fuerst did not have banking authority and could not negotiate the check which he received about 1:50 p.m. on June 13, 1989, so by federal express at the close of business that day, he mailed the application made by the Debtor for the annuity and the cashier's check to First Colony Life Insurance Company's home office in Lynchburg, Virginia. Thus, the check was not negotiated until after the Debtor had filed his petition in bankruptcy at 2:27 p.m. on June 13, 1989.

The Debtor has claimed the annuity he purchased as exempt under Florida Statute 222.14 in this proceeding. It is with this background of these facts that the wife and MILLER seek to have this Court deny the discharge of the Debtor for his transfer of $49,012.09 into an annuity with the intent to delay, hinder, or defraud creditors pursuant to 11 U.S.C. § 727(a)(2). The

Debtor admits that one of the reasons he put the money into an annuity was to ensure that his wife and MILLER would not be able to collect against this money.

■ As a general rule the conversion of nonexempt assets into exempt assets is allowable. In fact both the House and Senate Reports validate this approach by stating the following: "As under current law, the debtor will be permitted to convert nonexempt property into exempt property before the filing of the bankruptcy petition. This practice is not fraudulent as to creditors, as it permits the debtor to make full use of the exemptions to which he is entitled under the law." H.R.Rep. 95–595, 95 Cong., 1st Sess. 361 (1977); S.Rep. No. 95–989, 95 Cong., 2nd Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6317.

■ These comments were made in view of the federal exemptions which are more limiting than the exemptions provided under Florida Statute § 222.14 which is unlimited as to amount. This general rule has limits as the conversion of the nonexempt assets into exempt must be made prior to the filing and not made with the intent to defraud creditors. Where the nonexempt property is converted either post petition or is tied to a claim of a specific creditor, then the debtor's conduct will be objectionable under 11 U.S.C. § 727(a)(2). See In re Reed, 700 F.2d 986 (5th Cir.1983); In re Mehrer, 2 B.R. 309 (Bankr.Wa.1980); In re Collins, 19 B.R. 874 (Bankr.M.D.Fla.1982); In re Ford, 773 F.2d 52 (4th Cir.1985) and In re Smiley, 864 F.2d 562 (7th Cir.1989).

■ The Court finds that the property being converted by the Debtor was proceeds of the 50% ownership interest in Heritage Quality Construction Co., Inc., which was a marital asset. It is clear the wife had an interest in this asset at the time of the dissolution of marriage and the state court specifically entrusted this asset, as well as others, to the Debtor to allow him maximum flexibility to utilize the assets to pay the alimony obligations required under the final judgment to the wife and MILLER.

After the entry of the final judgment the Debtor began liquidating the majority of the marital assets and failed to pay the wife or MILLER. This was done even when the Debtor had at least $100,000.00 in discretionary spending which he used for a new home, stocks, gifts of $15,000.00 to his children by a previous marriage and the $50,000.00 certificate of deposit.

This Court follows those decisions which have denied a debtor's discharge which found extrinsic fraud such as where there was a diversion of business assets into exempt property or where borrowed monies are placed into exempt property. See In re Reed, 700 F.2d 986 (5th Cir.1983); In re Mehrer, 2 B.R. 309 (Bankr.Wa.1980); In re Collins, 19 B.R. 874 (Bankr.M.D.Fla. 1982); In re Ford, 773 F.2d 52 (4th Cir. 1985); In re Smiley, 864 F.2d 562 (7th Cir.1989). Here, after considering the amounts involved, the timing, the fact that the proceeds were derived from marital assets the wife had an interest in, the misleading impression given to the wife and the state court as to the availability of the certificate of deposit, and the insolvency of the Debtor clearly supports the conclusion that the Debtor's actions, in converting the certificate of deposit into the annuity, were done with the requisite fraudulent purpose to hinder, delay and defraud the wife and MILLER. For the Court to conclude otherwise would set the precedent to allow parties obligated under marital decrees to convert all of the marital properties into annuities or exempt property to avoid the obligations called for under such decrees.

The Debtor argues that the prior ruling of In re Blum, 41 B.R. 816 (Bankr.S.D.Fla. 1984) should govern this case. In Blum the Court stated the mere act of converting property into exempt property, without more is not prohibited by the Bankruptcy Code. Here the facts and circumstances are clearly distinguishable from those presented in Blum.

■ The Court also concludes that the transfer into the annuity was not completed prior to the filing of the bankruptcy petition.

The Court follows the Uniform Commercial Code and those decisions which hold that the transfer of a check occurs when the check is honored by the bank. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974) and *In re Sims Office Supply, Inc.*, 94 B.R. 744, 18 B.C.D. 1006 (Bankr.M.D.Fla.1988).

Here it is clear the check could not have been negotiated until it was received by the home office of First Colony Life Insurance Company in Lynchburg, Virginia, which was not until June 14, 1989, the day after the filing of the petition in bankruptcy. Thus, the transfer was an improper post petition transfer clearly made with the intent to delay, hinder and defraud not only the former wife and MILLER but also the Trustee.

Consequently, a separate judgment will be entered in this adversary in accordance with these findings of fact and conclusions of law.

### FINAL JUDGMENT

THIS MATTER having come before this Court on April 3, 1990 at 1:30 o'clock P.M., on the continued trial in this cause, and in conformity with the Findings of Fact and Conclusions of Law entered contemporaneously with this Final Judgment, it is hereby

ORDERED AND ADJUDGED that the Debtor, THOMAS FRANCIS GEPFRICH, is denied a discharge of his debts pursuant to 11 U.S.C. Section 727(a)(2).

DONE AND ORDERED.