**In re Teena POMERANTZ, Debtor.**

**Alberta POMERANTZ, Plaintiff,**

**v.**

**Teena POMERANTZ, Defendant.**

**Bankruptcy No. 96–33256–BKC–SHF.**
**Adversary No. 96–1304–BKC–SHF–A.**

United States Bankruptcy Court,
S.D. Florida.

July 25, 1997.

Daniel L. Bakst, West Palm Beach FL, for Debtor.

Patricia Dzikowski, Miami, FL, trustee.

## MEMORANDUM OPINION AND ORDER INTRODUCTION

BARRY S. SCHERMER, Bankruptcy Judge.

This matter came before the Court for trial in Miami, Florida on April 30, 1997 pursuant to Alberta Pomerantz's (the "Plaintiff") adversary complaint seeking to deny the discharge of Teena Pomerantz ("Debtor"). The Court heard testimony, considered the candor and demeanor of the witnesses, considered the evidence presented and the arguments of counsel, and made certain findings of fact and legal conclusions on the record. The Court asked the parties to submit proposed factual findings and conclusions of law. After a review of the materials submitted by the parties, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R Bankr.P. 7052.

## JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is appropriate before this Court pursuant to 28 U.S.C. § 1409.

## FINDINGS OF FACT

On December 20, 1994, Debtor received $307,639.00 from the sale of her New York residence. At that time, she and her ex-husband were subject to an agreement, which had been incorporated in a dissolution court judgment, that Spiral Commercial Corporation ("Spiral") would be paid $250,000 from the sale proceeds. Notwithstanding this agreement, the debt to Spiral debt was not paid when the residence was sold.

Debtor moved to Florida in January, 1996 and filed her bankruptcy petition in August, 1996. Between selling her New York residence and moving to Florida, Debtor incurred normal living expenses for herself and her minor son, Harrison. Debtor rented a living unit in New York for $1,600 a month until she moved to Florida. She had little or no income, and she lived on the proceeds from the sale of the New York house. Debtor visited Miami, West Palm Beach, and Boca Raton two or three times in 1995 to become familiar with the area and to vacation.

The evidence established that all of Debtor's money went into the purchase of the Boca Raton home. Debtor also purchased a $29,000 "equity membership" which she believed was necessary for her new home. Debtor borrowed the money for the "equity membership" from her mother, Irene Barkan. In March 1996, Debtor took out a $79,000.00 mortgage. She repaid her mother $30,000 which she had borrowed and retained the remaining balance for living expenses.

Sometime in November or December, 1994, Debtor first met with Mark Rosner, a branch manager of a New York securities firm. Mr. Rosner offered her a position in the firm's New York or Boca Raton office. Debtor accepted a position in the Boca Raton office sometime in January or February 1996.

Plaintiff[1], as receiver for and on behalf of the assets of Spiral, commenced a state court proceeding in New York to collect the debt owed Spiral[2] Summary judgement was

---

1. Plaintiff is the Debtor's former mother-in-law.

2. At the April 30, 1997 trial, Debtor sought an involuntary dismissal of this action based upon the Plaintiff having brought this suit in her individual capacity as opposed to having brought suit as receiver for, and on behalf of the assets of, Spiral. The Court denied that motion pursuant to Fed.R.Bankr.P. 7017 which allows the Court to substitute the real party in interest into a suit. The Plaintiff was instructed to amend her complaint to remedy this situation.

granted in favor of Plaintiff and against Debtor on January 4, 1996. Shortly thereafter, Debtor made two (2) wire transfers to Florida and purchased a $208,000.00 residence in Boca Raton on January 24, 1996. The New York state court entered a $276,725 judgement in favor of Plaintiff and against Debtor on March 6, 1996 which was eventually affirmed on appeal.

In 1996, Debtor's income was $1,400.00, although her schedules show $2,600.00 for the year. It is instructive to note that from 1994 to 1996, Debtor needed to reduce living expenses but did not. This need for a lifestyle change is important because although Debtor used checks, cash, and credit cards, her financial condition led her to pay $26,-000.00 to her mother to put into a New York bank account from which Debtor could draw checks to pay her obligations.

Debtor dealt in large sums of cash. On the following dates and in the following amounts she withdrew checks for cash from the account titled in her mother's name:

    (a) January 11, 1996—    $8,000.00
    (b) January 17, 1996—    $9,500.00
    (c) March 28, 1996—    $9,600.00
    (d) April 1, 1996—    $9,000.00

Debtor testified that this money was used to pay living expenses.[3]

## DISCUSSION

Plaintiff brought this action pursuant to three (3) provisions of 11 U.S.C. § 727. The second count was brought pursuant to 11 U.S.C. § 727(a)(2)(B), which deals with post-petition transfers. The Plaintiff argues, by inference, that the money spent or concealed may have been spent or concealed post-petition. There was insufficient evidence presented to support this argument, and therefore, judgment is entered in favor of the Debtor as to the § 727(a)(2)(B) count.

Count three was brought pursuant to 11 U.S.C. § 727(a)(4), which relies upon the Debtor having made a false oath to support this action. Plaintiff bases this count upon Debtor's alleged failure to disclose jewelry. However, Debtor testified that she disposed of her jewelry in 1991 and 1992, and all her remaining jewelry was retained by her father. The Court finds testimony on this point credible and finds no evidence to support Plaintiff's § 727(a)(4) action. Accordingly, the Court enters judgment in favor of the Debtor in regard to this count.

■ The remaining issues relate to Plaintiff's count one under 11 U.S.C. § 727(a)(2)(A) which provides in pertinent part that the court shall grant a debtor a discharge unless:

> [T]he debtor, with intent to hinder, delay, or defraud a creditor .... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-property of the debtor, within one year before the date of the filing of the petition.

Plaintiff bears the burden of proving the requisite intent to hinder, delay or defraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Equitable Bank v. Miller, (In re Miller)*, 39 F.3d 301, 306–7 (11th Cir.1994) (*citing In re Wines*, 997 F.2d 852, 856 (11th Cir.1993)).

■ This Court must determine whether the evidence presented at trial establishes an intent to hinder, delay or defraud a creditor sufficient to deny discharge under § 727(a)(2)(A). For the reasons set forth below, the Court finds that the evidence establishes extrinsic evidence of fraud, and Debtor's discharge must be denied.

As a preliminary matter, Plaintiff argues that Debtor's disposition of assets from January 1996 through the August 8, 1996 bankruptcy filing, should be a basis to deny discharge under 727(a)(2)(A). However, the evidence presented at trial was insufficient

---

**3.** Plaintiff argues that Debtor's Schedules I and J are inconsistent with this amount of living expenses. However, from Debtor's testimony, this Court is convinced that Debtor only listed her routine ordinary regular expenses on her Schedule J, and, therefore any inconsistency is understandable. For example, the Schedule J lists no clothing expense, no medical expense, and no health insurance, while the evidence established substantial medical bills on behalf of both Debtor and Harrison. Debtor suffers from several medical conditions, while Harrison has been under the care of numerous psychiatrists and psychologists for many years.

to support this contention. Debtor testified and the evidence strongly indicates that Debtor freely spent[4] prior to the bankruptcy filing. Such spending was not out of line with her lifestyle while in New York. Although her spending habits from January 1996 to the bankruptcy filing may have been unwise, the evidence does not establish that such habits were either inconsistent with her prior behavior or made with an intent to hinder, delay or defraud her creditors.

In making a determination whether a debtor's conduct is fraudulent under § 727(a)(2)(A), a leading commentator states:

> Although actual intent must be shown, a finding of actual intent may be based on circumstantial evidence or on inferences drawn from a course of conduct. This is because a debtor is unlikely to testify that the intent was fraudulent. This a court may look to all the surrounding facts and circumstances.

(citations omitted). 6 *Collier on Bankruptcy,* para. 727.03[3][b](15th ed.rev.1996) *see also Kriseman v. Ingersoll, (In re Ingersoll),* 106 B.R. 287, 292 (Bankr.M.D.Fla.1989)(*citing In re Kaiser,* 94 B.R. 779 (Bankr.S.D.Fla.1988)).

As a general matter, a transfer of nonexempt assets into exempt assets is allowable. However, the conversion may be considered fraudulent if other extrinsic evidence of fraudulent intent is present. *Gepfrich v. Gepfrich, (In re Gepfrich),* 118 B.R. 135, 138 (Bankr.S.D.Fla.1990) (*citing In re Reed,* 700 F.2d 986 (5th Cir.1983) and others); *Ameritrust Nat'l Bank v. Davidson, (In re Davidson),* 164 B.R. 782, 785 (Bankr.S.D.Fla.1994) (citations omitted) *aff'd in part and remanded* 178 B.R. 544 (S.D.Fla.1995). Also relevant to the inquiry is whether the nonexempt property is tied to the claim of a certain creditor. *Gepfrich,* 118 B.R. at 138 (citations omitted).

The evidence establishes Debtor's actual intent to defraud the Plaintiff. First, Debtor retained the $307,000 from the sale of the New York home which were subject to Debtor's agreement with Spiral, and the proceeds contractually should have been paid to retire the debt owed Spiral. Although Debtor correctly points out the failure to pay Spiral is a breach of contact (versus a conversion) the Court concludes that the money was "tied to the claim of a specific creditor." *Gepfrich,* 118 B.R. at 137.

Next, the timing of Debtor's flight to Florida is highly probative of fraud. Summary judgement was granted in favor of Plaintiff and against Debtor in the New York state court action on January 4, 1996, and Debtor purchased her house and equity membership only twenty (20) days later after wiring all her money to Florida. With such a close proximity between Debtor's losing the state court case and the transfer of funds into a homestead, the Court can reasonably infer the move to New York was motivated by a desire to keep from paying the debt owed Spiral.

The fact that *all* debtor's money went into the Boca Raton house indicative of fraud. Within forty five (45) days of the purchase, Debtor needed to place a mortgage on the Boca Raton house to provide money for living expenses. The Court concludes that placing all, or substantially all, of one's money into an exempt asset is an indicia of fraud which, when combined with the facts listed above, convince the Court that Debtor acted with the intent to defraud Plaintiff.

Finally, the Debtor failed to adequately explain why she decided to accept Mr. Rosner's job offer eighteen (18) months after it was tendered. Her statements of her desire to move to Florida because of this employment opportunity is belied by the timing of her job acceptance, her meager earnings ($1,400 for 1996) and the timing of the Spiral judgement.

The Court is cognizant of the line of cases which protect the homestead exemption provided under the Florida Constitution Article X Section 4. *See e.g. Bank Leumi Trust Co. of New York v. Lang,* 898 F.Supp. 883 (S.D.Fla.1995); *In re Clements,* 194 B.R. 923 (Bankr.M.D.Fla.1996); *Ezrol v. Lane, (In re Lane),* 190 B.R. 125 (Bankr.S.D.Fla.1995); *In re Popek,* 188 B.R. 701 (Bankr.S.D.Fla. 1995); *In re Blum,* 41 B.R. 816 (Bankr. S.D.Fla.1984); *In re Levine,* 40 B.R. 76

---

4. See itemized cash withdrawals totaling $36,-100 on pages 3–4 herein.

(Bankr.S.D.Fla.1984). However, this proceeding is not about the sanctity of the Florida homestead exemption; it is about fraud under § 727(a)(2)(A).

## CONCLUSION

For these reasons, the discharge of Teena Pomerantz is **DENIED** pursuant to 11 U.S.C. § 727(a)(2)(A).